DOUGLAS R. SCHWARTZ (State Bar No. 98666)
SCOTT R. LOVERNICK (State Bar No. 233755)
SCHWARTZ & CERA LLP
44 Montgomery Street, Suite 3850
San Francisco, California 94104
Telephone: (415) 956-2600
Facsimile: (415) 438-2655

Attorneys for Plaintiff
MARJORIE JOHNSON

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT COURT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>GREGORY F. GRIFFIN, an individual,<br><br>     Debtor.<br><br>———————————————————<br><br>MARJORIE JOHNSON, an individual,<br><br>     Plaintiff,<br><br>  vs.<br><br>GREGORY F. GRIFFIN, an individual,<br><br>     Defendant. | CASE NO.: 08-42426 TT<br><br>Chapter  7<br><br>COMPLAINT TO DETERMINE<br>DISCHARGEABILITY OF DEBTS<br>(11 U.S.C. §523(A)(2) and (4)) |

## I. PARTIES

1.  Plaintiff Marjorie Johnson ("Johnson") is an individual who resides in the city of Alamo, Contra Costa County, California.

2.  Defendant Gregory F. Griffin ("Griffin) is an individual who resides in the city of Alamo, Contra Costa County, California and a debtor in the above-captioned case.

-1-

## II. JURISDICTION AND VENUE

3.     This adversary proceeding is a core proceeding in the above-captioned case pursuant to 28 U.S.C. § 157(B)(2)(I) because it is a matter concerning the dischargeability of particular debts.

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 24 of the United States District Court for the Northern District of California.

5.     Venue in this Court is appropriate pursuant to 28 U.S.C. § 1409(a).

## III. GENERAL ALLEGATIONS

6.     Johnson has known defendant Greg Griffin for many years and at all times prior to December, 2005 reposed significant confidence and trust in Griffin's character, integrity and fidelity.

7.     Beginning in approximately 1982 and prior to co-founding and becoming the Chief Executive Officer of First Blackhawk Financial in 1992, Griffin was an employee of a stock brokerage and managed pension fund clients for Dean Witter and E.F. Hutton. During this period, Griffin frequently spoke to Johnson of the financial success that he had attained for his clients managing pension funds.

8.     At all relevant times herein, Griffin actively worked to secure the trust and confidence of Johnson. Griffin frequently remarked that he considered Ms. Johnson to be "family."

9.     In 1991, Johnson was going through a rather tumultuous divorce. Among the many problems she had to deal with as result of the divorce, Johnson was concerned about transferring her share of her soon-to-be ex-husbands retirement benefits to a personal retirement account for her. Griffin served as an expert witness for Johnson during the divorce proceedings concerning the eventual division and delivery of those finds.

10.     During the same time period, Griffin ingratiated himself to Johnson by consoling her during this difficult time in her life and assured her that he would look out for her interests.

-2-

Case: 08-42426 ... Filed: 05/14/09    Entered: 05/14/09 13:45:31    Page 2 of 29

Griffin represented that he could and would obtain an excellent return on any funds that Johnson came into as a result of any property settlement in her divorce, and that said funds would be secure in his hands.

11. Johnson eventually did select Griffin to invest the one-half interest in her ex-husband's retirement account that was awarded to her in the divorce proceedings. On September 27, 1991, Johnson authorized her then attorneys, the Law Offices of O'Brien, Sullivan & Jensen, to make a draft payable to her and then to have it hand delivered to Griffin.

12. The O'Brien, Sullivan firm delivered a check in the amount of $125,812.61 (the "Retirement Funds") to Griffin's office located at 710 Broadway, Suite 200, in Walnut Creek, California.

13. Griffin agreed to accept the Retirement Funds from Johnson and further agreed to prudently invest the Retirement Funds to create a nest egg for Johnson's retirement. Griffin advised Johnson that he believed that he would need and would work hard to grow the fund to a total of about $400,000 in order to provide for Johnson's active retirement. At the time, Johnson was a school teacher who was forty-eight years old.

14. In fact, Griffin never intended to safely and prudently invest Ms. Johnson's Retirement Funds. Although Griffin invested approximately $50,000 in an ill-conceived second mortgage and subsequently lost all or most of that money, the remainder was, unbeknownst to Johnson, used as seed money for the new company that Griffin co-founded in 1992: First Blackhawk Financial. Once the company was in operation, Griffin used Ms. Johnson's money as operating capital for First Blackhawk. When Griffin created and operated First Blackhawk, using at least in part Johnson's Retirement Funds, Johnson became a *de facto* client of First Blackhawk. Griffin personally benefited from the money invested by Johnson.

15. Unaware of the truth about Griffin's misuse of the Retirement Funds, Johnson remained grateful to Griffin for the assistance he gave her in early 1990s, which included acting as her expert consultant in the divorce proceedings to help in quantifying her ex-husband's financial interest in his law firm's pension plan, and going to court to ask that Johnson be provided with a settlement or an income from the divorce proceeding. Griffin further assisted Johnson with her personal bankruptcy.

-3-

Case: Filed: 05/14/09 Entered: 05/14/09 13:45:31 Page 3 of 29

16.     In the intervening years, Griffin repeatedly but falsely assured Johnson that her money was prudently safely invested. For example, on or about April 28, 1994 Griffin represented to Robert S. Gebhardt, an attorney Johnson consulted regarding a personal bankruptcy, that Griffin was managing Johnson's one-half interest in her ex-husband's pension fund (i.e., the Retirement Funds), that the pension fund was held in an ERISA qualified rollover account, and would not be subject to creditor claims. Griffin also represented that he would be willing to guarantee Johnson's fees for bankruptcy counsel.

17.     Exploiting the trust that he had developed with Johnson over the years, Griffin never provided Johnson with written statements of her account in the nearly fifteen years that he held the Retirement Funds and claimed to be investing the Funds on Johnson's behalf.

18.     In December of 2005, Johnson confronted a life-threatening illness. Shortly after that time, Johnson wrote to Griffin to inquire about the status of her account and noting that she would be forced to retire soon and needed to get her affairs in order. After several requests to meet, Griffin finally relented and, obviously concerned about Johnson's reaction to what Griffin planned to tell her, met with Johnson in a public coffee house where people knew him. At that meeting, Griffin told Johnson that her retirement funds were presently valued at a total of $80,000 and that she could not get at any of this money.

19.     Because the Retirement Funds have not been prudently invested and have not earned a reasonable return while in Griffin's care Johnson has very little money to fund her retirement. Additionally, Griffin's unlawful use of the Retirement Funds may have tax consequences or other legal consequences because the Retirement Funds were not, contrary to Griffin's representations, placed in an Erisa-qualified plan.

20.     At all times mentioned herein, Griffin has served as an investment advisor and fiduciary for Johnson. Johnson placed her trust in Griffin that he would at all times act openly, carefully and honestly in advising her on investment opportunities and protecting her assets. Johnson relied on Griffin to look after her best interests.

21.     Johnson is informed and believes that Griffin did not at all times act in her best interests, and was not entirely open, careful and honest in his course of dealings with her.

-4-

Case 08-42426 Doc 1 Filed: 05/14/09    Entered: 05/14/09 13:45:31    Page 4 of 29

Johnson is informed and believes that, among other things, Griffin: (1) used and misappropriated her money for unauthorized purposes; (2) falsely stated that certain of her loans would be adequately secured, when in fact there was no security or the security was inadequate; (3) failed to disclose the money he solicited would be used for seed money and operating capital and projects that were inadequately funded and would likely default. Had Griffin fulfilled his fiduciary obligations and been forthright and disclosed this material information, Johnson would not have participated in or made the following investments or loans, and would not have incurred all of the losses she has suffered in connection therewith.

22. In or about September, 1991, Griffin orally offered to take the Retirement Funds from Johnson and to invest the Retirement Funds in a reasonable and prudent manner in order to provide a nest egg for Johnson's golden years. Johnson accepted Griffin's offer and caused the Retirement Funds to be delivered to Griffin so that he could invest the funds.

23. Griffin breached the oral contract by failing to invest Johnson's money in safe and prudent investments. Instead, aside from one ill-conceived $50,000 second mortgage investment that was lost, Griffin used the Retirement Funds to open and operate First Blackhawk.

24. A confidential relationship existed because of the trust and confidence reposed by Johnson in the integrity and fidelity of Griffin. When Griffin agreed to accept the Retirement Funds that Johnson, because of her faith in Griffin's integrity and his repeated overtures to her, offered to Griffin for investment, a fiduciary relationship was created.

25. Griffin breached his fiduciary obligations to Johnson by failing to invest Johnson's money in a prudent and safe manner, by failing to keep Johnson informed of the status of her Retirement Funds so she could make reasonably informed decisions regarding her investments, and by using the Retirement Funds to open and operate First Blackhawk.

26. In order to induce Johnson to surrender the Retirement Funds to him, Griffin falsely represented that he would use his best efforts to prudently and safely invest the Funds with the goal of growing the Retirement Funds to the amount of $400,000, or as close thereto as possible, in order to provide for Johnson's active retirement.

27. In reliance on Griffin's representation that he would invest the Retirements Funds

-5-

Case: 08-42426   Doc #: 1   Filed: 05/14/09   Entered: 05/14/09 13:45:31   Page 5 of 29

with the objective of growing them, Johnson directed that the Retirement Funds be delivered to Griffin.

28.    At the time Griffin induced Johnson to deliver the Retirement Funds to him for investing, Griffin had no intention of investing the Funds and growing them to $400,000. In fact, Griffin planned to use the Retirement Funds to open and operate the company that would become Blackhawk Financial. Johnson was ignorant of the true facts and had she known of Griffin's secret intentions, Johnson would not have caused the Retirement Funds to be delivered to Griffin.

29.    Since the Retirement Funds were delivered to him in 1991, Griffin has continued to deceive Johnson and has falsely represented, *inter alia*, that the Retirement Funds were prudently invested in an Erisa-qualified plan and were, for that reason, beyond the reach of Johnson's personal creditors. Griffin made the foregoing representations in order to induce Johnson to allow Griffin to maintain control over the Retirement Funds. Johnson relied on Griffin's representations that the Retirement Funds were in an Erisa-qualified plan and allowed Griffin to maintain control over the Retirement Funds.

30.    Because of Griffin's fraud, the Retirement Funds have not been prudently invested and have not earned a reasonable return while in Griffin's care. As a result, Johnson, who for health reasons is being forced to retire prematurely, has very little money to fund her retirement. Additionally, Griffin's fraud may have tax consequences or other legal consequences because the Retirement Funds were not, contrary to Griffin's representations, placed in an Erisa-qualified plan.

31.    In perpetuating the fraud and failing to invest Johnson's Retirement Funds in a reasonably prudent manner, and instead using the Retirement Funds to open and operate First Blackhawk, Griffin's actions were fraudulent, oppressive and malicious and were undertaken with conscious disregard for the rights of Johnson.

32.    At the time that Griffin represented to Johnson that Griffin would safely and prudently invest the Retirement Funds with the goal of growing the Funds, Griffin had no reasonable grounds for believing his representation to be true.

33.    Griffin breached his legal and contractual duties to Johnson by failing to invest the pension funds in a reasonably prudent manner, by failing to properly account for the Retirement

-6-

Case 08-42426 Filed: 05/14/09    Entered: 05/14/09 13:45:31    Page 6 of 29

Funds so that Johnson could adequately manage her investment portfolio and risk, and by using the Retirement Funds to open and operate First Blackhawk.

34.     By failing and refusing to properly invest Johnson's Retirement Funds, by refusing to keep Johnson reasonably informed about the status of her investments, and by using the Retirement Funds to open and operate First Blackhawk, Griffin unreasonably interfered with Johnson's right to receive the benefits of her contract for the management of her Retirement Funds.

35.     Griffin, without Johnson's knowledge or consent, used the Retirement Funds to open and operate First Blackhawk Financial, thereby unlawfully converting the Retirement Funds to Griffin's own purposes.

36.     Instead of investing Johnson's pension fund in a qualified retirement account for Johnson's benefit, Griffin used the pension funds to advance his own individual goals in order to unjustly enrich himself.

37.     On September 7, 2006 Johnson filed a Complaint against Griffin in Contra Costa Superior Court, Case No. MSC06-01752, alleging eight causes of action, including: fraud, negligent misrepresentation, constructive fraud, and conversion. A true and correct copy of the Complaint is attached hereto as Exhibit A.

38.     On February 1, 2008, Judgment was entered in favor of Johnson and against Griffin in Contra Costa Superior Court, Case No. MSC06-01752 in the amount of $457,163.25, plus interest accruing from the date of entry of judgment and post-judgment costs incurred. A true and correct copy of the Judgment is attached hereto as Exhibit B.

39.     On February 27, 2008, Johnson filed a Notice of Judgment Lien with the State of California. A true and correct copy of the Judgment Lien is attached hereto as Exhibit C.

///

///

///

-7-

## FIRST CLAIM FOR RELIEF

### (Money Obtained by False Pretenses – 11 U.S.C. § 523(a)(2))

40.     Plaintiff realleges paragraphs 1 through 39 of this complaint as though fully set forth herein.

41.     Griffin knowingly and intentionally made material misrepresentations, and failed to disclose material information, in the course of inducing Johnson to invest her Retirement Funds.

42.     Johnson detrimentally relied on Griffin's false representations and omissions and as a result sustained loss and damage as set forth above.

43.     Griffin is indebted to Johnson for obtaining property by false pretenses, false representations, and actual fraud in amounts according to proof.

44.     Defendant's debts are nondischargeable under 11 U.S.C. § 523(a)(2).

## SECOND CLAIM FOR RELIEF

### (Debts Arising from Debtor's Fraud or Defalcation While Acting as Fiduciary –

### 11 U.S.C. § 523(a)(4))

45.     Plaintiff realleges paragraphs 1 through 44 of this complaint as though fully set forth herein.

46.     On information and belief, Griffin used monies entrusted to him by Johnson for his personal benefit as seed money and operating capital.

47.     Johnson relied on Griffin to look after her best interests in entrusting him with her Retirement Funds.  In this way, Johnson trusted Griffin to represent her carefully and honestly in the course of her business dealings.  As a result, Griffin owed Johnson fiduciary duties of fairness, honesty, good faith and full disclosure to Johnson of any and all matters pertaining to Johnson's financial matters.

-8-

Case 08-42426 Doc# 5    Filed: 05/14/09    Entered: 05/14/09 13:45:31    Page 8 of 29

48.     Griffin breached the fiduciary duties he owed Johnson.

49.     Griffin is indebted to Johnson on debt for fraud and defalcation while acting in a fiduciary capacity in an amount according to proof.

50.     Griffin's debts to Johnson are nondischargeable under 11 U.S.C. § 523(a)(4).

### PRAYER FOR RELEIF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.     On all Claims for Relief, for a determination that Defendant's debts to Johnson are nondischargeable in an amount according to proof.

2.     For reasonable costs and attorneys' fees.

3.     For each other and further relief as the Court may deem just and proper.

Respectfully Submitted,

SCHWARTZ & CERA LLP

Dated: May 14, 2009                  By: _____

Scott R. Lovernick, Esq.
Attorneys for Plaintiff
MARJORIE JOHNSON

COMPLAINT TO DETERMINE
DISCHARGEABILITY OF DEBTS
08-42426 (LJT)

# EXHIBIT A

# EXHIBIT B

DOUGLAS R. SCHWARTZ (State Bar No. 98666)
ROBERT J. SCOTT, Jr. (State Bar No. 151775)
SCHWARTZ & CERA LLP
44 Montgomery Street, Suite 3850
San Francisco, California 94104
Telephone: (415) 956-2600
Facsimile: (415) 438-2655

Attorneys for Plaintiff
MARJORIE JOHNSON

F I L E D

SEP. - 7 2006

K. TORRE CLERK OF THE COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA

By_____
Deputy Clerk

IN THE SUPERIOR COURT

IN AND FOR THE COUNTY OF CONTRA COSTA

MARJORIE JOHNSON, an individual,

    Johnson,

    vs.

GREGORY F. GRIFFIN, an individual,
FIRST BLACKHAWK FINANCIAL
CORPORATION, a California Corporation,
and DOES 1 through 10, inclusive,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. C 0 6 - 0 1 7 5 2 ■

COMPLAINT FOR BREACH OF ORAL
CONTRACT, BREACH OF FIDUCIARY
DUTY, FRAUD, NEGLIGENT
MISREPRESENTATION,
CONSTRUCTIVE FRAUD, BREACH OF
THE IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING,
CONVERSION. UNJUST ENRICHMENT
AND CONSTRUCTIVE TRUST

PER LOCAL RULE 5 THIS
CASE IS ASSIGNED TO
DEPT _____33_____

    COMES NOW Plaintiff MARJORIE JOHNSON and alleges against defendants and
each of them as follows:

    1. Plaintiff Marjorie Johnson ("Johnson") is an individual and a resident of Alamo,
California.

    2. Defendant Gregory F. Griffin ("Griffin") is an individual who, on information and
belief, resides in the San Ramon Valley area of Contra Costa County.

    3. Defendant First Blackhawk Financial Corporation ("First Blackhawk") is, on
information and belief, a California Corporation with its principal place of business in
Danville, California. On information and belief, First Blackhawk operates as a mortgage
company that actively seeks funds from investors that First Blackhawk then lends to people

1     and businesses.

2        4. The true names and capacities of defendants sued as Does 1 through 10, inclusive,

3     are unknown to Johnson, who sues these defendants by such fictitious names. Johnson will

4     seek leave to amend this complaint to show their true names and capacities when the same

5     have been ascertained. Johnson is informed and believes and thereon alleges that each of

6     these Defendants designated herein as a Doe was in some manner responsible for the

7     occurrences alleged in this Complaint and proximately caused damages to Johnson.

8        5. At all times, the defendants, and each of them, were acting as the agents and/or

9     co-conspirators of each of the other defendants and in performed the acts alleged herein in

10     their capacities as agents and co-conspirators.

11                        <u>GENERAL ALLEGATIONS</u>

12        6. Johnson has known defendant Greg Griffin for many years and at all times prior to

13     December, 2005 reposed significant confidence and trust in Griffin's character, integrity and

14     fidelity.

15        7. Beginning in approximately 1982 and prior to co-founding First Blackhawk

16     Financial in 1992, Griffin was an employee of a stock brokerage and managed pension fund

17     clients for Dean Witter and E.F. Hutton. During this period, Griffin frequently spoke to

18     Johnson of the financial success that he had attained for his clients managing pension funds.

19        8. At all relevant times herein, Griffin actively worked to secure the trust and

20     confidence of Johnson. Griffin frequently remarked that he considered Ms. Johnson to be

21     "family."

22        9. In 1991, Johnson was going through a rather tumultuous divorce. Among the

23     many problems she had to deal with as result of the divorce, Johnson was concerned about

24     transferring her share of her soon-to-be ex-husbands retirement benefits to a personal

25     retirement account for her. Griffin served as an expert witness for Johnson during the

26     divorce proceedings concerning the eventual division and delivery of those finds.

27        10. During the same time period, Griffin ingratiated himself to Johnson by consoling

28     her during this difficult time in her life and assured her that he would look out for her

interests. Griffin represented that he could and would obtain an excellent return on any funds that Johnson came into as a result of any property settlement in her divorce, and that said funds would be secure in his hands.

11. Johnson eventually did select Griffin to invest the one-half interest in her ex-husband's retirement account that was awarded to her in the divorce proceedings. On September 27, 1991, Johnson authorized her then attorneys, the Law Offices of O'Brien, Sullivan & Jensen, to make a draft payable to her and then to have it hand delivered to Griffin.

12. The O'Brien, Sullivan firm delivered a check in the amount of $125,812.61 (the "Retirement Funds") to Griffin's office located at 710 Broadway, Suite 200, in Walnut Creek, California.

13. Griffin agreed to accept the Retirement Funds from Johnson and further agreed to prudently invest the Retirement Funds to create a nest egg for Johnson's retirement. Griffin advised Johnson that he believed that he would need and would work hard to grow the fund to a total of about $400,000 in order to provide for Johnson's active retirement. At the time, Johnson was a school teacher who was forty-eight years old.

14. In fact, Griffin never intended to safely and prudently invest Ms. Johnson's Retirement Funds. Although Griffin invested approximately $50,000 in an ill-conceived second mortgage and subsequently lost all or most of that money, the remainder was, unbeknownst to Johnson, used as seed money for the new company that Griffin co-founded in 1992: First Blackhawk Financial. Once the company was in operation, Griffin used Ms. Johnson's money as operating capital for First Blackhawk. When Griffin created and operated First Blackhawk, using at least in part Johnson's retirement funds, Johnson became a *de facto* client of First Blackhawk.

15. Unaware of the truth about Griffin's misuse of the Retirement Funds, Johnson remained grateful to Griffin for the assistance he gave her in early 1990s, which included acting as her expert consultant in the divorce proceedings to help in quantifying her ex-husband's financial interest in his law firm's pension plan, and going to court to ask that

Case 09-04227   Doc# 1   Filed: 05/14/09   Entered: 05/14/09 13:45:31   Page 14 of 29

1  Johnson be provided with a settlement or an income from the divorce proceeding. Griffin

2  further assisted Johnson with her personal bankruptcy.

3      16. In the intervening years, Griffin repeatedly but falsely assured Johnson that her

4  money was prudently safely invested. For example, on or about April 28, 1994 Griffin

5  represented to Robert S. Gebhardt, an attorney Johnson consulted regarding a personal

6  bankruptcy, that Griffin was managing Johnson's one-half interest in her ex-husband's

7  pension fund (i.e., the Retirement Funds), that the pension fund was held in an ERISA

8  qualified rollover account, and would not be subject to creditor claims. Griffin also

9  represented that he would be willing to guarantee Johnson's fees for bankruptcy counsel.

10     17. Exploiting the trust that he had developed with Johnson over the years, Griffin

11  never provided Johnson with written statements of her account in the nearly fifteen years that

12  he held the Retirement Funds and claimed to be investing the Funds on Johnson's behalf.

13     18. In December of 2005, Johnson confronted a life-threatening illness. Shortly after

14  that time, Johnson wrote to Griffin to inquire about the status of her account and noting that

15  she would be forced to retire soon and needed to get her affairs in order. After several

16  requests to meet, Griffin finally relented and, obviously concerned about Johnson's reaction

17  to what Griffin planned to tell her, met with Johnson in a public coffee house where people

18  knew him. At that meeting, Griffin told Johnson that her retirement funds were presently

19  valued at a total of $80,000 and that she could not get at any of this money at the present

20  time.

21     19. Because the Retirement Funds have not been prudently invested and have not

22  earned a reasonable return while in Griffin's care Johnson, who for health reasons is being

23  forced to retire prematurely, has very little money to fund her retirement. Additionally,

24  Griffin's unlawful use of the Retirement Funds may have tax consequences or other legal

25  consequences because the Retirement Funds were not, contrary to Griffin's representations,

26  placed in an Erisa-qualified plan.

27                    FIRST CAUSE OF ACTION

28                    (Breach of Oral Contract)

20. Johnson incorporates and realleges paragraphs 1 through 19, above, as though fully set forth herein.

21. In or about September, 1991, Griffin orally offered to take the Retirement Funds from Johnson and to invest the Retirement Funds in a reasonable and prudent manner in order to provide a nest egg for Johnson's golden years. Griffin further represented that he could and would grow the Retirement Funds to about $400,000 to help provide for Johnson's active retirement. Johnson accepted Griffin's offer and caused the Retirement Funds to be delivered to Griffin so that he could invest the funds.

22. Griffin, both individually and as the agent of First Blackhawk, breached the oral contract by failing to invest Johnson's money in safe and prudent investments. Instead, aside from one ill-conceived $50,000 second mortgage investment that was lost, Griffin used the Retirement Funds to open and operate First Blackhawk.

23. As a result of Griffin's and First Blackhawk's breach of the oral agreement, Johnson has suffered general and special damages, including but not limited to severe emotional distress and worry, according to proof.

SECOND CAUSE OF ACTION

(Breach of Fiduciary Duty)

24. Johnson incorporates and realleges paragraphs 1 through 23, above, as though fully set forth herein.

25. A confidential relationship existed because of the trust and confidence reposed by Johnson in the integrity and fidelity of Griffin. When Griffin agreed to accept the Retirement Funds that Johnson, because of her faith in Griffin's integrity and his repeated overtures to her, offered to Griffin for investment, a fiduciary relationship was created.

26. Griffin, both individually as an agent of First Blackhawk, breached his fiduciary obligations to Johnson by failing to invest Johnson's money in a prudent and safe manner, by failing to keep Johnson informed of the status of her Retirement Funds so she could make reasonably informed decisions regarding her investments, and by using the Retirement Funds to open and operate First Blackhawk.

5

27. As a result of Griffin's breach, Johnson has suffered general and special damages, including but not limited to severe emotional distress and worry, according to proof.

### THIRD CAUSE OF ACTION

(Fraud)

28. Johnson incorporates and realleges paragraphs 1 through 27, above, as though fully set forth herein.

29. In order to induce Johnson to surrender the Retirement Funds to him, Griffin , both individually and as the agent of First Blackhawk Financial, falsely represented that he would use his best efforts to prudently and safely invest the Funds with the goal of growing the Retirement Funds to the amount of $400,000, or as close thereto as possible, in order to provide for Johnson's active retirement.

30. In reliance on Griffin's representation that he would invest the Retirements Funds with the objective of growing them to $400,000, Johnson directed that the Retirement Funds be delivered to Griffin.

31. At the time Griffin induced Johnson to deliver the Retirement Funds to him for investing, Griffin had no intention of investing the Funds and growing them to $400,000. In fact, Griffin planned to use the Retirement Funds to open and operate the company that would become Blackhawk Financial. Johnson was ignorant of the true facts and had she known of Griffin's secret intentions, Johnson would not have caused the Retirement Funds to be delivered to Griffin.

32. Since the Retirement Funds were delivered to him in 1991, Griffin has continued to deceive Johnson and has falsely represented, *inter alia*, that the Retirement Funds were prudently invested in an Erisa-qualified plan and were, for that reason, beyond the reach of Johnson's personal creditors. Griffin made the foregoing representations in order to induce Johnson to allow Griffin to maintain control over the Retirement Funds. Johnson relied on Griffin's representations that the Retirement Funds were in an Erisa-qualified plan and allowed Griffin and First Blackhawk to maintain control over the Retirement Funds.

33. Because of Griffin's fraud, the Retirement Funds have not been prudently invested and have not earned a reasonable return while in Griffin's care. As a result, Johnson, who for health reasons is being forced to retire prematurely, has very little money to fund her retirement. Additionally, Griffin's fraud may have tax consequences or other legal consequences because the Retirement Funds were not, contrary to Griffin's representations, placed in an Erisa-qualified plan.

34. As a result of Griffin's fraud, Johnson has suffered general and special damages, including but not limited to severe emotional distress, anxiety, malaise, mortification, and worry, according to proof.

35. In perpetuating the fraud and failing to invest Johnson's Retirement Funds in a reasonably prudent manner, and instead using the Retirement Funds to open and operate First Blackhawk, Griffin's and First Blackhawk's actions were fraudulent, oppressive and malicious and were undertaken with conscious disregard for the rights of Johnson. Punitive damages should be assessed against Griffin and First Blackhawk to make an example of said defendants and to deter such conduct in the future.

<u>FOURTH CAUSE OF ACTION</u>

(Negligent Misrepresentation)

36. Johnson incorporates and realleges paragraphs 1 through 35, above, as though fully set forth herein.

37. At the time that Griffin represented to Johnson that Griffin would safely and prudently invest the Retirement Funds with the goal of growing the Funds to as much as $400,000, Griffin had no reasonable grounds for believing his representation to be true.

38. In reliance on Griffin's representation that he would invest the Retirements Funds with the objective of growing them to $400,000, Johnson directed that the Retirement Funds be delivered to Griffin so that he could so invest them.

39. Since the Retirement Funds were delivered to him in 1991, Griffin has made additional representations including, *inter alia*, that the Retirement Funds were prudently invested in an Erisa-qualified plan and were, for that reason, beyond the reach of Johnson's

Case: 09-04227    Doc# 1    Filed: 05/14/09    COMPLAINT 05/14/09 13:45:31    Page 18 of 29

SUMMONS ISSUED

personal creditors. These representations were made for the purpose of inducing Johnson to allow Griffin to retain the Retirement Funds and were made without a reasonable basis for believing them to be true.

40. Because of Griffin's misrepresentations, the Retirement Funds have not been prudently invested and have not earned a reasonable return while in Griffin's care. As a result, Johnson, who for health reasons is being forced to retire prematurely, has very little money to fund her retirement. Additionally, Griffin's misrepresentations may lead to tax consequences or other legal consequences because the Retirement Funds were not, contrary to Griffin's representations, placed in an Erisa-qualified plan.

41. As a result of Griffin's misrepresentations, Johnson has suffered general and special damages, including but not limited to severe emotional distress, anxiety, malaise, mortification, and worry, according to proof.

42. In making the false representations regarding the status of the Retirement Funds and failing to invest Johnson's Retirement Funds in a reasonably prudent manner, and instead using the Retirement funds to open and operate First Blackhawk, Griffin's and First Blackhawk's actions were fraudulent, oppressive and malicious and were undertaken with conscious disregard for the rights of Johnson. Punitive damages should be assessed against Griffin and First Blackhawk to make an example of said defendants and to deter such conduct in the future.

### FIFTH CAUSE OF ACTION

(Constructive Fraud)

43. Johnson incorporates and realleges paragraphs 1 through 41, above, as though fully set forth herein.

44. Johnson entered into a confidential relationship with Griffin and First Blackhawk, reposing in them significant trust to manage her Retirement Funds and earn a reasonable return on such funds in order to provide for Johnson's active retirement.

45. Griffin, both individually and as the agent of First Blackhawk, breached his legal and contractual duties to Johnson by failing to invest the pension funds in a reasonably

Case: 09-04227    Doc# 1    Filed: 05/14/09    COMPLAINT 05/14/09 13:45:31    Page 19 of 29

prudent manner, by failing to properly account for the Retirement Funds so that Johnson could adequately manage her investment portfolio and risk, and by using the Retirement Funds to open and operate First Blackhawk.

46. As a result of the foregoing breaches, Johnson has suffered general and special damages including, but not limited to severe emotional distress and worry, according to proof.

47. In failing to invest Johnson's Retirement Funds in a reasonably prudent manner, and instead using the Retirement funds to open and operate First Blackhawk, Griffin's and First Blackhawk's actions were fraudulent, oppressive and malicious and were undertaken with conscious disregard for the rights of Johnson. Punitive damages should be assessed against Griffin and First Blackhawk to make an example of said defendants and to deter such conduct in the future.

<u>SIXTH CAUSE OF ACTION</u>

(Breach of the Implied Covenant of Good Faith and Fair Dealing)

48. Johnson incorporates and realleges paragraphs 1 through 46, above, as though fully set forth herein.

49. California law implies in every contract a covenant of good faith and fair dealing. The implied covenant requires that each party refrain from doing any unreasonable act that prevents the other party of the contract from obtaining the benefits thereof.

50. By failing and refusing to properly invest Johnson's Retirement Funds, by refusing to keep Johnson reasonably informed about the status of her investments, and by using the Retirement Funds to open and operate First Blackhawk, Griffin and First Blackhawk unreasonably interfered with Johnson's right to receive the benefits of her contract for the management of her Retirement Funds.

51. As a result of the foregoing breaches, Johnson has suffered general and special damages including, but not limited to, severe emotional distress and worry, according to proof.

52. In failing to invest Johnson's Retirement Funds in a reasonably prudent manner,

and instead using the Retirement Funds to open and operate First Blackhawk, Griffin's and First Blackhawk's actions were fraudulent, oppressive and malicious and were undertaken with conscious disregard for the rights of Johnson. Punitive damages should be assessed against Griffin and First Blackhawk to make an example of said defendants and to deter such conduct in the future.

## SEVENTH CAUSE OF ACTION

### (Conversion)

53. Johnson incorporates and realleges paragraphs 1 through 51, above, as though fully set forth herein.

54. Griffin, without Johnson's knowledge or consent, used the Retirement Funds to open and operate First Blackhawk Financial, thereby unlawfully converting the Retirement Funds to Griffin's and First Blackhawk's own purposes.

55. At the time of the conversion, Defendants knew that Johnson was relying on them to prudently invest the Retirement Funds in order to grow a nest egg for Johnson's active retirement. It was accordingly foreseeable that their conversion of the Retirement Funds would cause Johnson severe emotional distress.

56. As a result of Defendants' conversion of the Retirement Funds, Johnson has suffered general and special damages including, but not limited to, severe emotional distress, anxiety, malaise, mortification and worry, according to proof.

57. In failing to invest Johnson's Retirement Funds in a reasonably prudent manner, and instead converting the Retirement Funds to open and operate First Blackhawk, Griffin's and First Blackhawk's actions were fraudulent, oppressive and malicious and were undertaken with conscious disregard for the rights of Johnson. Punitive damages should be assessed against Griffin and First Blackhawk to make an example of said defendants and to deter such conduct in the future.

## EIGHTH CAUSE OF ACTION

### (Unjust Enrichment and Constructive Trust)

58. Johnson incorporates and realleges paragraphs 1 through 56, above, as though

1  fully set forth herein.

2      59.  Instead of investing Johnson's pension fund in a qualified retirement account for

3  Johnson's benefit, Griffin and First Blackhawk used the pension funds to advance their own

4  individual goals in order to unjustly enrich themselves.

5      60.  Johnson requests that the Court impose a constructive trust on Griffin's

6  ownership interest in First Blackhawk to secure restitution to Johnson in the full amount of

7  the pension funds entrusted to Griffin and upon any such other assets or revenues as Griffin

8  and/or First Blackhawk may have gained by virtue of their misuse of Johnson's Retirement

9  Funds.

10                              PRAYER

11      WHEREFOR, Plaintiff Marjorie Johnson prays:

12      (1)     For general and special damages according to proof;

13      (2)     For punitive damages;

14      (3)     For the imposition of a constructive trust upon the assets of defendants;

15      (4)     For attorney's fees and costs; and

16      (5)     For such other and further relief as the court may deem proper.

17  Dated: September 7, 2006          SCHWARTZ & CERA LLP

18

19

20

21                                  Douglas R. Schwartz

22                                  Attorneys for Plaintiff
                                    MARJORIE JOHNSON

23

24

25

26

27

28

DOUGLAS R. SCHWARTZ (State Bar No. 98666)
ROBERT J. SCOTT, Jr. (State Bar No. 151775)
SCHWARTZ & CERA LLP
44 Montgomery Street, Suite 3850
San Francisco, California 94104
Telephone: (415) 956-2600
Facsimile: (415) 438-2655

Attorneys for Plaintiff
MARJORIE JOHNSON

FILED

2008 FEB -6 A 9:36

K. TORRE, CLERK OF THE SUPERIOR COURT
COUNTY OF CONTRA COSTA, CALIF.
BY: _____
S. KRICKEN, Deputy Clerk

IN THE SUPERIOR COURT

IN AND FOR THE COUNTY OF CONTRA COSTA

MARJORIE JOHNSON, an individual,

    Johnson,

    vs.

GREGORY F. GRIFFIN, an individual,
FIRST BLACKHAWK FINANCIAL
CORPORATION, a California Corporation,
and DOES 1 through 10, inclusive,

    Defendants.

CASE NO. MSC06-01752

[Proposed]
JUDGMENT BY COURT AFTER
DEFAULT

Date:  January 25, 2008
Time:  9:00 a.m.
Dept.:  2

Complaint Filed: September 7, 2006

-1-

JUDGMENT BY COURT

Defendants Gregory F. Griffin and First Blackhawk Financial Corporation failed to appear for

a case management conference on December 14, 2007. The Court issued an order to show cause for

failure to appear and notified the defendants that failure to appear for hearing on January 3, 2008

would cause the Court to strike defendants' answers. Defendants failed to appear on January 3, 2008

and their answers were stricken. The matter was set for hearing on default on January 25, 2008.

The Court, having considered the plaintiff's brief, the declarations of Marjorie Johnson and

Robert J. Scott, Jr., and the evidence contained therein, is hereby ordered that:

Judgment be entered in favor of Plaintiff Marjorie Johnson against Defendants Gregory F.

Griffin and First Blackhawk Financial Corporation in the amount of $400,000 as damages,

prejudgment interest pursuant to Civil Code Section 3287(b) in the amount of $55,342.60, and costs

of suit  in the amount of $ *Per Cent Bill*

Interest on the amount of this judgment will accrue at 10% per annum from the date that

judgment is entered until it is satisfied.

It is so ordered.

Date: ~~January 25, 2008~~ *Feb. 1, 2008*

BARBARA ZUNIGA
_____
Hon. Barbara Zuniga
Judge of the Superior Court

Exhibit    C

# NOTICE OF JUDGMENT LIEN
FOLLOW INSTRUCTIONS CAREFULLY (front and back of form )

**A. NAME & PHONE OF FILER'S CONTACT (optional)**
Scott R. Lovernick, Esq. (415) 956-2600

**B. SEND ACKNOWLEDGMENT TO: (NAME AND ADDRESS)**

Schwartz & Cera LLP
ATTN: SCOTT R. LOVERNICK, ESQ.
44 Montgomery Street, Suite 3850
San Francisco, CA 94104

**08-7149139153**
**02/27/2008 17:00**

**FILED**
CALIFORNIA
SECRETARY OF STATE

SOS

16078860002     UCC 1 FILING

THIS SPACE FOR FILING OFFICE USE ONLY

**1. JUDGMENT DEBTOR'S EXACT LEGAL NAME –Insert only one name, either 1a or 1b.  Do not  abbreviate or combine names.**

**1a. ORGANIZATION'S NAME**
First Blackhawk Financial Corporation

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4145 Blackhawk Plz. Cir. Ste. 201 | Danville | CA | 94506 | US |

**2. JUDGMENT CREDITOR'S NAME– Do not abbreviate or combine names.**

**2a. ORGANIZATION'S NAME**

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE | SUFFIX |
|---|---|---|---|
| Johnson | Marjorie | | Ms. |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1470 Danville Blvd., #7 | Alamo | CA | 94507 | US |

**3. ALL PROPERTY SUBJECT TO ENFORCEMENT OF A MONEY JUDGMENT AGAINST THE JUDGMENT DEBTOR TO WHICH A JUDGMENT LIEN ON PERSONAL PROPERTY MAY ATTACH UNDER SECTION 697.530 OF THE CODE OF CIVIL PROCEDURE IS SUBJECT TO THIS JUDGMENT LIEN.**

A.  Title of court where judgment was entered: Superior Court of Contra Costa County

B.  Title of the action: Johnson v. Griffin, First Blackhawk Financial Corporation

C.  Number of this action: MSC06-01752

D.  Date judgment was entered: February 6, 2008

E.  Date of subsequent renewals of judgment (if any):

F.  Amount required to satisfy judgment at date of this notice: $ 457,163.25

G.  Date of this notice: 02-21-08

**4.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

SIGNATURE – SEE INSTRUCTION NO. 4    Schwartz & Cera LLP

Dated: 02-21-08
(If not indicated, use same as date in item 3G.)

FOR:  Judgment Debtor Marjorie Johnson

FILING OFFICE COPY

NOTICE OF JUDGMENT LIEN (FORM JL1) (Rev. 6/01)
Approved by the Secretary of State

# JUDGMENT LIEN ADDENDUM
**FOLLOW INSTRUCTIONS CAREFULLY (FRONT AND BACK OF FORM)**

**5. NAME OF JUDGMENT DEBTOR:** (NAME OF FIRST DEBTOR ON RELATED JUDGMENT LIEN)

| 5a. ORGANIZATION'S NAME   First Blackhawk Financial Corporation | | | |
|---|---|---|---|
| 5b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**6. ADDITIONAL JUDGMENT DEBTOR – insert only one name (6a or 6b):**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S LAST NAME   Griffin | FIRST NAME   Gregory | MIDDLE NAME   F. | SUFFIX   Mr. |
| 6c. MAILING ADDRESS   203 Hawk Court | CITY   Alamo | STATE   CA / POSTAL CODE   94507 | COUNTRY   US |

**7. ADDITIONAL JUDGMENT DEBTOR – insert only one name (7a or 7b):**

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

**8. ADDITIONAL JUDGMENT DEBTOR – insert only one name (8a or 8b):**

| 8a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 8b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 8c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

**9. ADDITIONAL JUDGMENT CREDITOR – insert only one name (9a or 9b):**

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 9c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

**10. ADDITIONAL JUDGMENT CREDITOR – insert only one name (10a or 10b):**

| 10a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 10b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

(1) FILING OFFICER COPY – JUDGMENT LIEN ADDENDUM FORM (REV. 6/01)

CA Secretary of State



## UCC Filing Acknowledgement

03/07/2008

Page 1 of 1

SCHWARTZ & CERA LLP
44 MONTGOMER ST., SUITE 3850
SAN FRANCISCO CA 94104

Filing Fee:          $10.00

Total Fee:          **$10.00**

The California Secretary of State's Office has received and filed your document. The information below reflects the data that was indexed in our system. Please review the information for accuracy. Included is an image of the filed document to assist you in your review. If you find a potential error, please notify the UCC Section at the number listed below at your earliest convenience.

Filing Type: **Judgement Lien**          File Date: **02/27/2008**          File Time: **17:00**

Filing Number: **08-7149139153**          Lapse Date: **02/27/2013**

Debtor(s):
ORGANIZATION          **FIRST BLACKHAWK FINANCIAL CORPORATION**

                      **4145 BLACKHAWK PLZ. CIR. STE. 201 DANVILLE CA USA 94506**

INDIVIDUAL            **GRIFFIN, GREGORY, F., MR.**

                      **203 HAWK COURT ALAMO CA USA 94507**

Secured Party(ies):
INDIVIDUAL            **JOHNSON, MARJORIE, , MS.**

                      **1470 DANVILLE BLVD., #7 ALAMO CA USA 94507**

Filing by the Secretary of State is not conclusive proof that all conditions for securing priority have been met. Ensuring that accurate information is on the document to be filed is the responsibility of the filing party. If this filing is challenged, the Secretary of State does not guarantee that the filing is legally sufficient to secure priority under UCC Article 9 and expressly disclaims any liability for failure of the filing party to secure priority resulting from the information contained in the filed document, or the lack of information on the filed document.

UNIFORM COMMERCIAL CODE 1500 11TH STREET, 2ND FL. · SACRAMENTO, CA 95814 · PO BOX 942835 · SACRAMENTO, CA 94235-0001 · (916) 653-3516 · HTTPS://UCCCONNECT.SOS.CA.GOV

PROGRAMS ARCHIVES, BUSINESS PROGRAMS, ELECTIONS, INFORMATION TECHNOLOGY, CALIFORNIA STATE HISTORY MUSEUM,
MANAGEMENT SERVICES, SAFE AT HOME, DOMESTIC PARTNERS REGISTRY, NOTARY PUBLIC, POLITICAL REFORM



SECRETARY OF STATE

STATE OF CALIFORNIA

## Packing Slip

SCHWARTZ & CERA LLP
44 MONTGOMER ST., SUITE 3850
SAN FRANCISCO CA 94104

| | | Customer Account No: | 20396353 |
|---|---|---|---|
| | | Batch No : | 1607886 |
| | | Date : | 03/07/2008 |

| Item | Name / Reference No. | Status | Amount |
|---|---|---|---|
| Judgment Lien - 2 pages or less | 08-7149139153 | Processed | $10.00 |
| Check | 9063 | Retained | $10.00 |

| | | |
|---|---|---|
| Total Fees Charged : | | $10.00 |
| Total Payment Received : | | $10.00 |
| Total Debited From Customer Account : | | $0.00 |
| Balance Credited to Customer Account : | | $0.00 |
| Amount to be Refunded : | | $0.00 |

**Note**

Unless specifically requested, overpayments are credited to your Customer Account for future use.
Any balance credited to the Customer Account may be refunded upon request.

UNIFORM COMMERCIAL CODE  1500 11TH STREET, 2ND FL. · SACRAMENTO, CA 95814 · PO  BOX 942835 · SACRAMENTO, CA 94235-0001 · 916 653 3516 · HTTPS://UCCCONNECT.SS.CA.GOV

PROGRAMS: ARCHIVES, BUSINESS PROGRAMS, ELECTIONS, INFORMATION TECHNOLOGY, CALIFORNIA STATE HISTORY MUSEUM,
MANAGEMENT SERVICES, SAFE AT HOME, DOMESTIC PARTNERS REGISTRY, NOTARY PUBLIC, POLITICAL REFORM